Hammill v. Louisville & Nashville Railroad Company.

CASE 59—PETITION ORDINARY—OCTOBER 1.

93 343,
104 679

# Hammill v. Louisville & Nashville Railroad Company.

### APPEAL FROM KENTON CIRCUIT COURT.

1. PEREMPTORY INSTRUCTION.—When the evidence conduces in any degree to establish the right of recovery it is improper to instruct the jury to find for defendant.

2. RAILROADS—DUTY TO PERSON ON TRESTLE BY LICENSE OF COMPANY.—Where an employe of a railroad company, in going to and from his place of work, was accustomed to cross a trestle over which trains passed, there being no other convenient way, he is not to be regarded as a trespasser, but as having been licensed to cross the trestle, and those in charge of an engine passing over the trestle were, therefore, under obligation to vigilantly look out for his presence and guard against a collision, the trestle being too narrow for a person to get out of the way of the approaching engine. And in any event it was their duty to use reasonable care to avoid killing him after discovering his presence. And in this action by his widow against the railroad company to recover damages for destruction of his life by the willful neglect of defendant, as there was testimony tending to show that those in charge of the engine by which he was struck and killed could have avoided the collision if they had used proper diligence, or if they had not been hindered seeing the deceased by the steam from a defective chest, the jury would have been warranted to find willful neglect, and, therefore, the court erred in giving a peremptory instruction to find for defendant.

HALLAM & MYERS FOR APPELLANT.

Argued orally by Harvey Myers. No brief in record.

O'HARA & BRYAN FOR APPELLEE.

As the decedent went upon the bridge, which was intended exclusively for trains, when it was difficult, by reason of the hour and of the atmospheric conditions, to see, and when he knew that trains were constantly passing and must of necessity have heard and seen the approaching train, his death was due to his own negligence, and his widow can not, therefore, recover. (L. & N. R. Co. v. Howard's Adm'r, 82 Ky., 214; Shackleford's Adm'r v. L. & N. R. Co., 84 Ky., 44; Rountree v. Stephens, 8 Ky. Law Rep., 433.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant, Ann Hammill, widow of James Hammill, brought this action to recover damages for destruction of his life by alleged willful neglect of servants and agents of appellee. And the question for decision is whether the lower court properly instructed the jury at conclusion of plaintiff's evidence to find for the defendant. As said in L. & N. R. Co. v. Howard's Adm'r, 82 Ky., 212, "This court has often held that where the evidence conduced in any degree to establish the right of recovery it is improper to instruct to find for the defendant."

That doctrine is in accordance with the well settled rule making the jury the sole and exclusive triers of fact in both criminal and civil proceedings, and investing them, not the court, with power to judge of and determine the weight of evidence and credibility of witnesses. Applying to this the test indicated in the case cited, it was, we think, error to give the peremptory instruction to the jury of which appellant complains.

It appears from the evidence that James Hammill was at time of his death and had for many years been in the employment of appellee, and, for about one year next preceding that event, was daily engaged about the round-house situated in Campbell county on the north side of Licking River, while his residence was on the south side thereof in Kenton county. At the south end of the railroad bridge is a trestle connecting it with ground higher than bank of the river, the precise length of which trestle does not clearly appear. As was his custom the deceased had, between five and six o'clock A. M., started from his residence to the round-house, and when near the north end of the trestle, upon which he was traveling, was struck and knocked off by a switch engine going

Hammill v. Louisville & Nashville Railroad Company.

from the north to south side, to which was attached two or three freight cars. There were upon the engine, besides the engineer and fireman, two or three brakemen, the fireman, not the engineer, having at the time charge of it.

The witness, and only one, who testified on the trial to the circumstances under which the collision occurred, resulting in death of appellant's intestate, was at the time a brakeman in employment of appellee who, instead of going with the engine and cars across the river, as he testified, remained on the north side, and was at the time near the switch leading from the main track to the company's yard, and was near enough to see the engine and cars when the collision took place. He testifies that he heard just before the deceased was struck a person who was evidently him, cry out "stop, for God's sake stop." That the weather was somewhat rainy and misty, but not enough so to obstruct the engineer's view of the track, and the inference is reasonable he might have seen the deceased in time to avoid the collision. The witness states the important fact the steam chest on the right side of the engine leaked very badly, causing so much steam to arise therefrom as to obstruct the view of the engineer or person in charge of the engine. It further appears the employes, while on the engine, were scuffling, and the jury might reasonably conclude the engine was not moved across the bridge with proper care.

It further appears that there was no other convenient way for the deceased to cross the river from his residence to the round-house except upon the trestle, which was too narrow for a person to get out of the way of an approaching engine, and he had been accustomed to go

that way.   The evidence does not authorize the conclusion the deceased was a trespasser; on the contrary it may be fairly assumed the appellee knew he was in the habit of going that way and therefore was tacitly if not expressly licensed to do so, and those in charge of the engine that killed him were therefore under obligation to vigilantly look out for his presence and guard against colliding with him.

In any event, it was their duty to use reasonable care to avoid killing him, after discovering his presence, and there is evidence conducing to show this might have been done; for the track on the trestle where he was struck is an up-grade, and the engine could have been more readily stopped than on a down or even level grade.

It seems to us clear that the testimony in this case is such as that the jury might have reasonably inferred the collision could have been avoided if those in charge of the train had observed proper diligence, or not been hindered seeing the deceased by the steam from the defective steam chest, and consequently if permitted, might have in their judgment found sufficient evidence to warrant, and consequently returned, a verdict of willful neglect.

There was an effort on cross-examination to contradict and depreciate the credibility of the main witness for appellant.   But whether the testimony of that witness was credible or not, or to what extent he was entitled to be believed, was exclusive province of the jury, not of the court, to determine.

Wherefore the judgment is reversed for a new trial and further proceedings consistent with this opinion.